UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

TRAILSEDGE OWNERS ASSOCIATION,          )
INC.,                                   )
     Plaintiff,                          )
                                        )
                                        )
     v.                                  )
                                        )
                                        )
NED SKI ASSOCIATES, LLC, LAUDON         )
ASSOCIATES, INC., ESTATE OF DONALD      )
A. KLEPACKI, LAUREL G. KLEPACKI,        )
JOSEPH KLEPACKI, and BLUE MOON          )
DESIGN ARCHITECTURAL DESIGN, LLC,       )
     Defendants,                         )     Case No.: 2:23-cv-90
                                        )
                                        )
     v.                                  )
                                        )
MIKE JARVIS, DENNIS RAWSON,             )
MIKE DAVIS, STEVE DOSTAL, PAUL          )
DLUBAC, III, HAMILTON CONSTRUCTION,)
LLC, STEVENS ROOFING & SIDING,          )
SPRAGUE STONEWORK d/b/a VERMONT         )
STONEWORK, SVT MASONRY, LLC, and        )
CHRIS BARNEY MASONRY,                   )
     Third-Party Defendants.             )

## ORDER
(Docs. 212, 222, 223, 227, 240, and 247)

This construction-defect action arises from alleged deficiencies at the Trailsedge

Development ("the Development"). The operative pleading is the Second Amended Complaint,

which Plaintiff Trailsedge Owners Association, Inc. ("Trailsedge") filed on April 15, 2024. (Doc.

44.) Defendants have asserted third-party claims against multiple contractors and subcontractors.

(Doc. 109.)

Several third-party defendants have moved to dismiss the Amended Third-Party Complaint

under Federal Rule of Civil Procedure 12(b)(6). While the motions to dismiss were pending, the

Third-Party Plaintiffs also moved for leave to further amend the third-party pleading. (Doc. 228.) The court now addresses the pending motions to dismiss and the motion to amend.

## Procedural Background

This action arises from alleged construction defects at the Development. Trailsedge filed its Complaint on May 12, 2023. (Doc. 1.) Plaintiff then filed an Amended Complaint on June 21, 2023, (Doc. 13), and a Second Amended Complaint on April 15, 2024, (Doc. 44).

On April 15, 2024, NED Ski Associates, LLC; Laudon Associates, Inc.; the Estate of Donald A. Klepacki; Laurel G. Klepacki; and Joseph Klepacki ("Third-Party Plaintiffs") filed a Third-Party Complaint asserting claims against multiple contractors and subcontractors. (Doc. 45.) On October 24, 2024, Third-Party Plaintiffs filed an Amended Third-Party Complaint. (Doc. 109.) In 2025, several third-party defendants filed motions to dismiss the third-party claims, including Chris Barney Masonry, (Doc. 212), Mike Davis, (Doc. 222), Mike Jarvis, (Doc. 223), Sprague Stonework d/b/a Vermont Stonework, (Doc. 227), Stevens Roofing & Siding, (Doc. 240), and Paul Dlubac, III, (Doc. 247).

Separately, the Third-Party Plaintiffs moved for leave to amend the Amended Third-Party Complaint. (Doc. 228.) Third-Party Defendant Hamilton Construction, LLC moved to join Sprague Stonework's motion to dismiss, (Doc. 242), and filed an opposition to the motion to amend, (Doc. 246).[1] The motions to dismiss and the motion to amend remain pending.

## Standard

*Motion to Dismiss*

When presented with a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), the court accepts all factual allegations included in the complaint as true and draws all

---

[1] The documents numbered 242 and 246 are two identical copies of one document. They have been assigned two docket numbers to reflect the two separate requests contained in the single document.

reasonable inferences in favor of the plaintiff. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). "A motion to dismiss a counterclaim, third-party claim, and cross-claim is evaluated under the same standard as a motion to dismiss a complaint." *Kitchen Winners NY Inc. v. Rock Fintek LLC,* 668 F. Supp. 3d 263, 282 (S.D.N.Y 2023) (citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

A plausible claim includes factual allegations that permit the court "to infer more than the mere possibility of misconduct." *Iqbal,* 556 U.S. at 679. A plaintiff is required to allege enough facts to "nudge[] their claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570. In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570).

"While it is true that the pleading standards may be 'lessened somewhat for third-party claims, which may be read in conjunction with the original pleadings . . . third-parties seeking indemnification or contribution must still set forth enough facts to state a claim to relief that is plausible on its face.'" *Cubilete v. United States,* 469 F. Supp. 3d 13, 20 (E.D.N.Y. 2020) (quoting *Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or., Inc.*, 156 F. Supp. 3d 348, 361 (E.D.N.Y. 2016)). "While the complaint need not state with precision all elements giving rise to a legal basis for recovery, it should contain either direct or indirect allegations (from which inferences can be made) on every material point necessary to sustain recovery on any legal theory." *Toberman v. Copas,* 800 F. Supp. 1239, 1243 (M.D. Pa. 1992) (citation omitted).

A pending motion to dismiss is not automatically rendered moot when a complaint is amended. *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020) (citations omitted) ("District courts in this Circuit have repeatedly explained that, when faced with an amended complaint, they may either deny a pending motion to dismiss as moot or consider the merits of the motion, analyzing the facts as alleged in the amended pleading."). Because the Third-Party Plaintiffs have filed a proposed Second Amended Complaint, the court will consider the merits of the pending motions to dismiss by analyzing the allegations contained in the proposed amended pleading.

*Motion to Amend Complaint*

Under Federal Rule of Civil Procedure 15, "[t]he court should freely give leave [to amend] when justice so requires," making sure to interpret the rule liberally in favor of amendment so as to enable disputes to be resolved on the merits whenever possible. *See* Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that leave to amend is entrusted to the court's discretion); *Assam v. Deer Park Spring Water, Inc.*, 163 F.R.D. 400, 404 (E.D.N.Y. 1995) (citing *Foman*, 371 U.S. at 182). Rule 15(a) is a lenient standard. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). "[I]f the movant has at least colorable grounds for relief, justice . . . require[s]" that the court grant leave to amend a complaint. *Golden Trade, S.r.L. v. Jordache*, 143 F.R.D. 504, 506 (S.D.N.Y. 1992) (citation modified).

Generally, leave to amend pleadings under Rule 15 shall only be denied if there is "undue delay, bad faith, futility . . . , [or] resulting prejudice to the opposing party." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 603 (2d Cir. 2005) (citation modified). In determining futility, the test is whether "the proposed claim could not withstand a Fed. R. Civ. P. 12(b)(6) motion to dismiss." *Salazar v. Bowne Realty Assocs., L.L.C.*, 796 F. Supp. 2d 378, 383 (E.D.N.Y.

4

2011) (citing *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)). Before applying this test, however, the court notes "[i]t is well-established in [the Second] Circuit that the burden of proving futility rests on the party opposing the amendment." *FC Online Mktg., Inc. v. Burke's Martial Arts, LLC*, No. 14-CV-3685 (SJF)(SIL), 2016 WL 11481193, at *7 (E.D.N.Y. Sept. 30, 2016) (citation modified) (collecting cases), *report and recommendation adopted*, 2016 WL 6236312 (E.D.N.Y. Oct. 25, 2016).

<u>Analysis</u>

**I.    Motion to Dismiss Third-Party Defendant Mike Davis**

Third-Party Defendant Mike Davis ("Davis") moves to dismiss all claims against him for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. 222.) Davis contends the claims against him have the same problems the court identified in a previous order dismissing claims against Third-Party Defendants Paul Dlubac, III ("Dlubac") and Stevens Roofing & Siding ("Stevens"): "[W]hile the Third-Party Complaint made the conclusory statement that Third-Party Defendant is responsible for the deficiency in the work, there are no allegations outlining what specific actions Third-Party Defendant took, or failed to take . . . ." (Doc. 248 at 2) (citation modified). Davis contends the Third-Party Second Amended Complaint ("Third-Party SAC") does not cure these problems but instead "add[s] language expanding [Third-Party Plaintiffs'] initial allegations as to the general type of work Davis was hired to perform." *Id.* Davis argues "the new Complaint is still devoid of any allegations of any specific actions Davis took, or failed to take, which were in breach of his contract or which would give rise to a claim of indemnification against him," and it therefore does not raise a right to relief above the speculative level. *Id.* at 2–3.

"As with other civil claims in general, . . . a complaint alleging breach of contract [need not] allege detailed facts or plead evidence." *Corning Inc. v. Shenzhen Xinhao Photoelectric Tech.*

*Co.*, 478 F. Supp. 3d 456, 462 (W.D.N.Y. 2020); *see also Kaleida Health v. Medtronic Sofamor Danek USA, Inc.*, No. 05-CV-0675C(F), 2006 U.S. Dist. LEXIS 92295, at \*8 (W.D.N.Y. Dec. 21, 2006) (citation modified) ("All that is required is a short and plain statement of the breach of contract claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests"); *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358 (2d Cir. 2010) (citing *Iqbal*, 556 U.S. at 678) ("[N]otice pleading supported by facially plausible factual allegations is all that is required—nothing more, nothing less"). The Federal Rules do "not require a plaintiff, absent discovery, to identify with pinpoint accuracy the exact defect" in a construction case. *See 535 Iberville, LLC v. F.H. Myers Constr. Corp.*, CIVIL ACTION NO. 2:24-cv-56, 2025 WL 522701, at \*4 (E.D. La. Feb. 18, 2025).

The court concludes the Third-Party SAC adequately states claims against Davis for breach of contract and express indemnification. The Third-Party SAC alleges Davis agreed to perform and did perform work on the siding and decks of several Buildings (among other work). (Doc. 228-2 at 18, ¶ 82; *id.* at 19, ¶ 84.) The Third-Party SAC also attaches and incorporates allegations from the underlying Second Amended Complaint.[2] (*Id.* at 4, ¶ 17.) The Second Amended Complaint alleges the veneer siding was "installed in a manner inconsistent with manufacturer's instructions or industry standards and failed to protect the structural elements of the Buildings," that the concrete piers and footing of the decks were "not constructed in [a] manner consistent with industry standards in Vermont," and that the decks were not properly attached to the sides of the Buildings. (Doc. 44 at 12, ¶ 80.) The Second Amended Complaint further alleges the structural

---

[2] Local Rule of Procedure 15(b) provides, "No amendment may incorporate any prior filing by reference without prior authorization of the court." No party objected to the Third-Party Plaintiffs' incorporation of the Second Amended Complaint into the proposed Third-Party SAC. Because there was no objection, the court considers the allegations of the Second Amended Complaint in its analysis of the pending motions to dismiss. The court, however, asks the parties to follow the Local Rules in all future filings.

elements of the Buildings experienced "extensive water damage [and] rotting" as a result of "absent or improper house wrap installation, flashing and sheathing." *Id.* It is certainly plausible the improperly installed siding contributed to the extensive water damage and rotting on the structural elements of the Buildings. *See 535 Iberville*, 2025 WL 522701 at *4. The Third-Party SAC also alleges the contract with Davis "provided an indemnity and hold-harmless provision for all losses, damages, [and] expenses including attorney's fees arising out of or resulting from its work." (Doc. 228-2 at 22, ¶ 100.) As a result, the Third-Party SAC raises plausible claims that Davis breached the contract by improperly installing siding and decks in the Development and must indemnify the Third-Party Plaintiffs. Davis's Motion to Dismiss Counts V and VI (Doc. 222) is DENIED.

## II.    Motion to Dismiss Third-Party Defendant Mike Jarvis

Mike Jarvis ("Jarvis") filed a motion to dismiss all claims against him for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[3] (Doc. 223 at 1.). Jarvis asks the court to dismiss the claims against him because "there are no allegations that would support a claim that Mr. Jarvis breached his contract with Third-Party Plaintiffs." (Doc. 223 at 3.) Jarvis contends Third-Party Plaintiffs "do not allege that Mike Jarvis did anything wrong" but instead "simply offer the conclusory allegation that if they are liable and if any of the damages 'relate to any work

---

[3] Before filing their motions to dismiss, certain Third-Party Defendants filed answers to the Third-Party Amended Complaint. (*See, e.g.*, Doc. 112.) "The Second Circuit has made clear that even if a defendant has answered a complaint, a motion to dismiss, although styled as a Rule 12(b)(6) motion, could and should be considered as a Rule 12(c) motion for judgment on the pleadings." *Haynes v. Exec. Chamber for Off. of Governor of N. Y.*, No. 1:23-cv-08051 (MKV), 2025 WL 2780866, at *3 (S.D.N.Y. Sept. 30, 2025) (citation modified). As a result, the court will construe Third-Party Defendants' 12(b)(6) motions as motions for judgment on the pleadings under Rule 12(c). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (citations omitted). "In both postures, the district court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *Id.* (citing *Irish Lesbian & Gay Org.*, 143 F.3d 638, 644 (2d Cir. 1998)).

by Jarvis[,]' then he is liable to them." *Id.* As a result, Jarvis argues the Third-Party Plaintiffs' "conclusory allegations . . . are wholly insufficient to support a claim." *Id.* at 4.

Third-Party Plaintiffs oppose Jarvis's motion and contend the Third-Party SAC sufficiently pleads the counts against Jarvis. Third-Party Plaintiffs argue, "[T]he Second Amended Third-Party Complaint clearly alleges facts that support a plausible theory of liability that NED and Jarvis entered into an agreement whereby Jarvis performed work on that project, including, but not limited to, framing, installing trim, installing interior trim, and pre-framing." (Doc. 230 at 6.) The Third-Party SAC alleges Jarvis performed this work on 3A Slalom Lane, 3B Slalom Lane, 3C Slalom Lane, 3F Slalom Lane, 3G Slalom Lane, and 3H Slalom Lane. *Id.*

The Third-Party SAC does not sufficiently plead claims against Jarvis. Neither the Third-Party SAC nor the Second Amended Complaint (incorporated by the Third-Party SAC) pleads any plausible factual allegations that Jarvis deficiently performed any work in the Development. Although the Third-Party SAC adds details about the types of work Jarvis performed and the units where Jarvis worked, no factual allegations from either the Third-Party SAC or the Second Amended Complaint support the contention that the specific types of work Jarvis performed, in the specific units where Jarvis performed them, were deficient in any way. Third-Party Plaintiffs do not even attempt to identify any factual allegations showing deficiency in Jarvis's work, instead relying on the conclusory statement, "Plaintiff alleges that work performed on the Development was deficient." *Id.* Such conclusory statements plainly do not satisfy the pleading standards of Rule 8. *See Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 555) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Jarvis's Motion to Dismiss Counts I and II (Doc. 223) is GRANTED.

III.   **Motion to Dismiss Third-Party Defendant Sprague Stonework**

Third-Party Defendant Sprague Stonework d/b/a Vermont Stonework ("Sprague") asks the court to dismiss all claims against it for failure to state a claim.[4] Sprague contends the Third-Party SAC "urge[s] the Court to conclude, *ipso facto*, that Sprague is responsible for any allegedly defective stonework at a general location without identifying any acts or omissions by Sprague that caused those defects." (Doc. 259 at 4.) Sprague argues the Third-Party SAC fails in several respects, including that it fails to "distinguish[] between the two buildings in the Trailsedge Development that could fit [the Third Party SAC's description] or specify[] any residential units therein," (Doc. 241 at 2); that "[t]here are no . . . allegations about what work Sprague performed, how that work was deficient in any [way], or what damage any alleged deficiencies may have caused," *id.* at 3; and that the Third-Party SAC "fail[s] to attribute any breach to Sprague specifically" rather than other Third-Party Defendants who also performed stone masonry work, (Doc. 259 at 3).

The court concludes the Third-Party SAC contains sufficient allegations about the work Sprague performed, the deficiency of the work, and damages to plead plausible claims for breach of contract and express indemnification. As Sprague itself notes, the Third-Party SAC adds allegations that "Sprague performed stonework" on "Building 3 on Slalom Lane." (Doc. 241 at 2.) That stonework included "cultured stone veneer on the exterior of the buildings." (Doc. 228-2 at 36, ¶ 177.) The Second Amended Complaint describes the deficiencies of the stonework of Slalom Building 3: "the Association . . . discovered latent defects in the design and construction

---

[4] Certain Third-Party Defendants filed both motions to dismiss and, after Third-Party Plaintiffs filed their Motion to Amend the Third-Party Complaint, supplemental memoranda in support of their motions to dismiss. (*See* Doc. 238 at 2 (ordering that Third-Party Defendants who have filed Motions to Dismiss may supplement their motions in light of the Amended Third-Party Complaint.)) The court refers to the motion to dismiss and supplemental motion to dismiss collectively as a single motion.

of the exterior walls of Slalom Building 3 in the Development when the faux stonework on the exterior walls began to fall off." (Doc. 44 at 9, ¶ 62); *see also id.* ("In addition, the stones on the faux chimneys on the top of the roof of Slalom Building 3 began to fall off, creating a serious risk of potential damage to property and injury to people."). The Association incurred "costs of $73,939.20 . . . to complete the repair of the exterior walls of Slalom Building 3." *Id.,* ¶ 64. The Third-Party SAC thus contains facially plausible allegations to support its claims against Sprague: Sprague installed stonework on the exterior of Slalom Building 3, and the improperly installed stones began to fall off the exterior.

The court is not persuaded to dismiss the claims against Sprague because the Third-Party SAC does not "distinguish[] between the two buildings in the Trailsedge Development that could fit" the description of "Building 3 on Slalom Lane" or "specify[] any residential units therein." (Doc. 241 at 2.) Sprague contends "[t]he amended allegations against other Third-Party Defendants show that Third-Party Plaintiffs know there is more than one structure that could constitute 'Building 3 on Slalom Lane.'" *Id.* The court disagrees. The Third-Party SAC repeatedly refers to "Building 3" in the singular. (*See, e.g.,* Doc. 228-2 at 6, ¶ 27; *id.* at 7, ¶ 34; *id.* at 9, ¶ 42; *id.* at 36, ¶¶ 178–79.) Sprague cites isolated paragraphs in the Third-Party SAC that refer to "Buildings," plural—for example, "Buildings 3A, 3F Slalom Lane, 3G Slalom Lane, and 3H Slalom Lane" and "Buildings 3A Slalom Lane, 3B Slalom Lane, 3C Slalom Lane, and 3D Slalom Lane." *Id.* at 38, ¶¶ 191–93. The Third-Party SAC, however, also refers to those same units in the singular—for example, "Building 3F Slalom Lane, 3G Slalom Lane, and 3H Slalom Lane." *Id.* at 34, ¶ 169; *see also, e.g., id.* at 35, ¶ 173. Reading the Third-Party SAC as a whole, it appears to the court the Third-Party SAC describes one structure on Slalom Lane as "Building 3" containing individual units identified by letters (such that one unit within Building 3 is called

10

Unit "3A" and another unit is called "3B"). At the motion to dismiss stage, the court must accept all factual allegations included in the Third-Party SAC as true and draw all reasonable inferences in favor of the Third-Party Plaintiffs. *See Mills*, 12 F.3d at 1174. Although the Third-Party SAC may not be a model of clarity regarding how many structures in the Development could reasonably be referred to as "Building 3," Rule 8 only requires fair notice supported by facially plausible factual allegations, which the Third-Party SAC provides. *See Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004); *Morgan Stanley*, 592 F.3d at 358 (citing *Iqbal*, 556 U.S. at 678). In any event, as Third-Party Plaintiffs point out, Sprague "in its answer [to the Third-Party Complaint] has admitted 'that Sprague performed work on a single building associated with Trailsedge in 2012.'" (Doc. 250 at 7 (quoting Doc. 79 at 6, ¶ 72.))

Sprague also notes the SAC "fail[s] to attribute any breach to Sprague specifically" and alleges "at least one other subcontractor performed the same work at the same location, albeit with greater specificity." (Doc. 259 at 3, 4.) This observation, however, does not render the Third-Party SAC unsatisfactory under Rule 8. The Second Circuit has held that the "key to Rule 8(a)'s requirements is whether adequate notice is given" and that "fair notice" is "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial." *Wynder*, 360 F.3d at 79 (citation modified). "[T]he Federal Rules offer sufficient latitude to construe separate allegations in a complaint as alternative theories, at least when drawing all inferences in favor of the nonmoving party," as is appropriate on a motion to dismiss. *City of Almaty, Kazakhstan v. Ablyazov*, No. 15-CV-5345 (AJN), 2020 WL 2896683, at *3 (S.D.N.Y. June 1, 2020) (citation modified). "Additionally, a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency." *Id.* (citation modified). In this instance, the Third-

Party SAC identifies several Third-Party Defendants who agreed to perform stonework in the Development and explains the alleged deficiencies in the stonework. At this stage, those allegations provide each of the Third-Party Defendants notice of the claim and plausible factual allegations to support the claim. The possibility that more than one Third-Party Defendant performed substandard stonework or that the claims against the Third-Party Defendants may be inconsistent with one another does not run afoul of Rule 8. *See Henry v. Daytop Village, Inc.*, 42 F.3d 89, 95 (2d Cir. 1994) ("[W]e may not construe [the plaintiff's] first claim as an admission against another alternative or inconsistent claim."). Sprague's Motion to Dismiss Counts XV and XVI (Doc. 227) is DENIED.

## IV.    Motion to Dismiss Claims Against Third-Party Defendant Chris Barney Masonry

Chris Barney Masonry ("Barney) moves to dismiss all claims against it for failure to state a claim. Barney contends the pleadings do not identify any specific acts by Barney that breached the contract and contain no allegations that Barney caused any harm or contributed to any defect. (Doc. 212 at 3–4; Doc. 245 at 3.) Barney further contends the defects alleged in the pleadings "merely list[] general and often vague locations and description[s] of work performed by Third-Party Defendants, which often overlap each other." (Doc. 245 at 2.) In other words, Barney argues the pleadings do not link Barney to any alleged deficiencies in the construction because other parties could have performed the substandard work.

The allegations in the Third-Party SAC are sufficient to state claims for breach of contract and implied indemnification against Barney. The Third-Party SAC alleges Barney performed various types of stonework on Buildings in the Development. Barney's work includes: stone on pillars and the front of buildings, (Doc. 228-2 at 41, ¶ 206); interior stone and tile installation, *id.*, ¶ 208; chimneys, *id.* at 42, ¶ 209; chimney flashing, *id.*, ¶ 210; working on rear columns, *id.* at 43, ¶ 213; exterior masonry repairs, *id.*, ¶ 214; working on fireplace stone and hearths, *id.*, ¶ 215; stone

12

repair, *id.*, ¶ 216; and working on bluestone on columns, *id.*, ¶ 217. The Second Amended Complaint alleges defects in the design and construction of parts of the Buildings Barney worked on. In particular, the Second Amended Complaint alleges the "design and construction of the . . . faux chimneys . . . was deficient and failed to comply with accepted standards of construction, architectural design, and engineering practices," that "inspections identified defects with . . . fireplace chimneys in all of the Buildings in the Development," and that "[f]aux chimney stonework on the roofs was not properly installed and is detaching[,] causing a safety hazard from falling stones." (Doc. 44 at 7, ¶ 42); *id.* at 10, ¶ 68; *id.* at 12, ¶ 80(e). The Third-Party SAC further alleges that Barney "represented that it would provide professional installation of the product" and that Barney "bears an equitable duty to indemnify the third-party plaintiffs" for damages resulting from his work. (Doc. 228-2 at 44, ¶ 218); *id.* at 47, ¶ 235. As a result, the Third-Party SAC states plausible claims that Barney breached the contract by improperly installing stonework on roofs and chimneys in the Development and must indemnify the Third-Party Plaintiffs.

As discussed in detail above regarding claims against other Third-Party Defendants, the fact the Third-Party SAC alleges other Third-Party Defendants performed stonework does not warrant dismissal of the claims against Barney. "[A] plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency." *Ablyazov*, 2020 WL 2896683, at *3 (S.D.N.Y. June 1, 2020) (citation modified). The Third-Party SAC identifies several Third-Party Defendants who agreed to perform work on stonework in the Development and explains the alleged deficiencies in the stonework. At this stage, those allegations provide each of the Third-Party Defendants notice of the claim and plausible factual allegations to support the claim. The possibility of more than one Third-Party Defendant performing substandard work on the stonework or of the claims against the Third-Party Defendants being inconsistent with one another

13

does not run afoul of Rule 8. *See Daytop Village*, 42 F.3d at 95 ("[W]e may not construe [the plaintiff's] first claim as an admission against another alternative or inconsistent claim."). Barney's Motion to Dismiss Counts XIX and XX (Doc. 212) is DENIED.

## V.    Third-Party Defendant Hamilton Construction's Motion to Join Motions to Dismiss

Hamilton Construction ("Hamilton") filed a motion asking the court "for permission to join Hamilton's fellow Third-Party Defendants in moving to dismiss the current Third-Party Complaint for failure to state a claim upon which relief may be granted." (Doc. 242 at 1.) Third-Party Plaintiffs filed an opposition to Hamilton's motion but chose to "interpret[] Hamilton's Motion as a Motion to Dismiss and respond[] accordingly." (Doc. 268 at 2, n.1.) Third-Party Plaintiffs did not raise any procedural objections to Hamilton's Motion. The court will construe Hamilton's Motion as a motion to dismiss.

Hamilton asks the court to dismiss all claims against it because "the current Third[-]Party Complaint contains no allegations outlining what specific actions Hamilton took, or failed to take, which were in breach of the contract." (Doc. 242 at 5) (emphasis omitted) (citation modified). Hamilton contends "the current Third-Party Complaint has the same infirmities with respect to its allegations against Hamilton as it does with respect to its virtually identical breach of contract and express indemnity claims" the court dismissed against Third-Party Defendant Dlubac. *Id.*; (*see also* Doc. 209 at 6.)

The court concludes the allegations of the Third-Party SAC adequately state claims against Hamilton for breach of contract and express indemnification. The Third-Party SAC adds new allegations against Hamilton, including that Hamilton agreed to perform and did perform work on "roof trusses" and "truss roof systems" on buildings in the Development (among other work). (Doc. 228-2 at 31, ¶¶ 149, 152.) Roof trusses are frames that hold roofs. The Second Amended Complaint alleges that "[d]esign and construction" of the roofs "caus[ed] ice dams and leaking

14

and allowed structural elements of the Buildings to be damaged." (Doc. 44 at 12, ¶ 80(d).) It is certainly plausible that an improperly designed or installed roof truss allowed ice dams to form and contributed to leaking and water damage on structural elements of the Buildings. *See 535 Iberville*, 2025 WL 522701 at *4. The Third-Party SAC also alleges the contract with Hamilton "provided an indemnity and hold-harmless provision for all losses, damages, [and] expenses including attorney's fees arising out of or resulting from its work." (Doc. 228-2 at 34, ¶ 165.) Consequently, the Third-Party SAC raises plausible factual allegations to support claims that Hamilton breached the contract by improperly constructing roof trusses in the Development and must indemnify the Third-Party Plaintiffs. Hamilton's Motion to Dismiss Counts XI and XII (Doc. 242) is DENIED.

## VI.    Motion to Dismiss Third-Party Defendant Stevens Roofing & Siding

Stevens moves to dismiss all claims against it for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Stevens contends the Third-Party SAC does not state a claim for relief because it "does not advance any alleged facts that Stevens performed inadequate work or breached its contract with Third-Party Plaintiffs." (Doc. 240 at 3.) Stevens contends the Third-Party SAC "is still missing a key component that this Court highlighted in granting Stevens['s] first Motion to Dismiss, namely 'allegations outlining what specific actions Stevens took, or failed to take, which were in breach of contract.'" *Id.* at 4 (emphasis omitted) (citation modified). According to Stevens, "[T]here are no allegations that Stevens['s] work was defective, that the buildings that Stevens allegedly performed work on were deficiently constructed, or that Stevens failed to meet the terms of its contract in any other way." *Id.* at 5. For this reason, Stevens argues the Third-Party SAC does not nudge its claims across the line from conceivable to plausible, and the claims must be dismissed.

15

The court concludes the Third-Party SAC plausibly states claims for breach of contract and express indemnification against Stevens for similar reasons to those discussed above regarding Third-Party Defendant Davis. Although the Third-Party Amended Complaint pleaded that Stevens entered into a contract for work on the Buildings, it did not plead that Stevens actually performed any work on the Buildings. (*See* Doc. 208 at 6) (citation omitted) (granting Stevens's motion to dismiss claims against him under Third-Party Amended Complaint because "[t]here are no allegations outlining what specific actions Stevens took, or failed to take, which were in breach of the contract."). The Third-Party SAC adds allegations that Stevens "did perform work, including installation of siding and trim, on buildings in the Development."[5] (Doc. 228-2 at 34, ¶ 169.) The Second Amended Complaint, which is incorporated into the Third-Party SAC, alleges the veneer siding was "installed in a manner inconsistent with manufacturer's instructions or industry standards and failed to protect the structural elements of the Buildings" and the structural elements of the Buildings experienced "extensive water damage [and] rotting" as a result of "absent or improper house wrap installation, flashing and sheathing." (Doc. 44 at 12, ¶ 80.) As discussed earlier regarding Third-Party Defendant Davis, it is certainly plausible the improperly installed siding contributed to the extensive water damage and rotting on the structural elements of the Buildings. *See 535 Iberville*, 2025 WL 522701 at *4. Put another way, the Third-Party SAC states Stevens agreed to install siding, installed the siding, and the siding failed to protect the structural

---

[5] In its Reply, Stevens contends the Third-Party SAC "adds that Stevens performed siding and trim work on units 3F, 3G, and 3H on Slalom Lane," but that the Second Amended Complaint "does not identify which specific building" at Slalom Building 3 showed deficiencies. (Doc. 275 at 3.) Thus, Stevens asserts, "[i]f the deficiencies occurred at units 3A, 3B, 3C, or 3D, for example, Stevens would not have had any part in the siding work on those units, based on the allegations made by Third-Party Plaintiffs." *Id.* The Third-Party SAC, however, does not limit Stevens's work to units 3F, 3G, and 3H only: "Laudon Associates, Inc., contracted with Stevens to perform work including installation of siding and trim on buildings in the Development, *including* Building 3F Slalom Lane, 3G Slalom Lane, and 3H Slalom Lane, and Stevens did perform work, including installation of siding and trim, on buildings in the Development, *including* Building 3F Slalom Lane, 3G Slalom Lane, and 3H Slalom Lane." (Doc. 228-2 at 34, ¶ 169) (emphasis added).

elements of the Buildings from water damage. The Third-Party SAC also contends, "The contract provided an indemnity and hold-harmless provision for all losses, damages, [and] expenses including attorney's fees arising out of or resulting from its work." (Doc. 228-2 at 35, ¶ 174.) Those allegations at this stage raise factually plausible claims for breach of contract and express indemnification.

Stevens also notes the SAC "identifies several other Third-Party Defendants who performed siding work." (Doc. 275 at 3.) As discussed in detail above regarding claims against other Third-Party Defendants, the fact the Third-Party SAC alleges other Third-Party Defendants performed siding work does not warrant dismissal of the claims against Stevens. "[A] plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency." *Ablyazov*, 2020 WL 2896683, at *3 (S.D.N.Y. June 1, 2020) (citation modified). The Third-Party SAC identifies several Third-Party Defendants who agreed to perform work on siding in the Development and explains the alleged deficiencies in the siding. At this stage, those allegations provide each of the Third-Party Defendants notice of the claim and plausible factual allegations to support the claim. The possibility of more than one Third-Party Defendant performing substandard work on the siding or of the claims against the Third-Party Defendants being inconsistent with one another does not run afoul of Rule 8. *See Daytop Village*, 42 F.3d at 95 ("[W]e may not construe [the plaintiff's] first claim as an admission against another alternative or inconsistent claim."). Stevens's Motion to Dismiss Counts XIII and XIV (Doc. 240) is DENIED.

## VII.    Motion to Dismiss Third-Party Defendant Paul Dlubac, III

Third-Party Defendant Dlubac asks the court to dismiss all claims against him because the Third-Party SAC "fails to support any claim because it does not allege any deficiencies or inadequate work by him." (Doc. 247 at 3.) Dlubac contends, "To add to the problem of

17

deciphering exactly what Dlubac did to breach his contract, Third-Party Plaintiffs [have] brought very general and very similar claims against numerous subcontractors, many alleging the same work on the same buildings." *Id.* at 3–4.

The court concludes the Third-Party SAC adequately states claims against Dlubac for breach of contract and express indemnification. The Third-Party SAC adds new allegations against Dlubac, including that Dlubac agreed to perform and did perform work on "decks and the pumphouse" on buildings in the Development (among other work). (Doc. 228-2 at 25, ¶ 117.) The Second Amended Complaint, which is incorporated into the Third-Party SAC, alleges that the "[c]oncrete piers and footing" of the decks were "not constructed in [a] manner consistent with industry standards in Vermont," that the decks displayed "[m]issing and inconsistent framing," and that the decks were not "properly attach[ed] . . . to the building sides." (Doc. 44 at 12, ¶ 80.) The Third-Party SAC also alleges that the contract with Dlubac "provided an indemnity and hold-harmless provision for all losses, damages, [and] expenses including attorney's fees arising out of or resulting from its work." (Doc. 282-2 at 30, ¶ 144.) As a result, the Third-Party SAC raises plausible factual allegations to support claims that Dlubac breached the contract by improperly constructing and attaching decks in the Development and must indemnify the Third-Party Plaintiffs.

As discussed in detail above regarding claims against other Third-Party Defendants, the fact the Third-Party SAC alleges other Third-Party Defendants performed work on the deck does not warrant dismissal of the claims against Dlubac. "[A] plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency." *Ablyazov*, 2020 WL 2896683, at *3 (S.D.N.Y. June 1, 2020) (citation modified). The Third-Party SAC identifies several Third-Party Defendants who agreed to perform work on decks in the Development and

explains the alleged deficiencies in the decks. At this stage, those allegations provide each of the Third-Party Defendants notice of the claim and plausible factual allegations to support the claim. The possibility of more than one Third-Party Defendant performing substandard work on the decks or of the claims against the Third-Party Defendants being inconsistent with one another does not run afoul of Rule 8. *See Daytop Village*, 42 F.3d at 95 ("[W]e may not construe [the plaintiff's] first claim as an admission against another alternative or inconsistent claim."). Dlubac's Motion to Dismiss Counts IX and X (Doc. 247) is DENIED.

## VIII.  Motion to Amend Complaint

Third-Party Plaintiffs filed a motion to amend their third-party complaint, attaching the proposed Second Amended Complaint referred to in this order as the Third-Party SAC. (*See* Doc. 228.) Several Third-Party Defendants oppose the amendment, arguing it would be futile. (*See, e.g.*, Doc. 246 at 6.)

In determining futility, the test is whether "the proposed claim could not withstand a Fed. R. Civ. P. 12(b)(6) motion to dismiss." *Salazar*, 796 F. Supp. 2d at 383 (citing *Lucente*, 310 F.3d at 258). As discussed in the previous sections, the Third-Party SAC withstands all motions to dismiss except Jarvis's. The court DENIES the Motion to Amend with respect to Jarvis's claims and otherwise GRANTS the Motion to Amend.

### Conclusion

Third-Party Defendant Mike Jarvis's Motion to Dismiss (Doc. 223) is GRANTED. The remaining Motions to Dismiss (Docs. 212, 222, 227, 240, and 247) are DENIED.

DATED at Rutland, in the District of Vermont, this 14th day of January 2026.

Mary Kay Lanthier
United States District Judge

19